UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

CRAIG DUANE WARREN,                                    Case No. 09-12078
                                                       Chapter 7
                    Debtor.                            Hon. Scott W. Dales

_____/

PLASTERERS LOCAL 67 PENSION TRUST                      Adv. Pro. No. 10-80022
FUND, PLASTERERS APPRENTICESHIP
TRUST FUND, CEMENT MASONS VACATION
& HOLIDAY TRUST FUND-DETROIT &
VICINITY, MICHIGAN TROWEL TRADES
HEALTH & WELFARE FUND, and PLASTERERS
DUES FUND,

                    Plaintiffs,

v.

CRAIG DUANE WARREN,

                    Defendant.

_____/

OPINION AND ORDER


        Prior to filing his Chapter 7 bankruptcy petition, Debtor-Defendant Craig Warren
("Defendant") was involved in the construction business as a contractor or subcontractor. He
identified an opportunity to work in Detroit on a private construction project at Wayne State
University through his wholly-owned limited liability company known as Probuild of Delton,
LLC ("Probuild"). In connection with the project, he entered into a collective bargaining
agreement with five Detroit-area employee benefit funds.[1]

        The Wayne State project encountered difficulties, and Probuild found itself unable to pay
various laborers, including some that Plaintiffs represent. Plaintiffs obtained a judgment against

_____

[1] The Plaintiffs (unincorporated voluntary associations organized to collect benefits due to laborers) include the
Plasterers Local 67 Pension Trust Fund, Plasterers Apprenticeship Trust Fund, Cement Masons Vacation & Holiday
Trust Fund-Detroit and Vicinity, Michigan Trowel Trades Health & Welfare Fund, and Plasterers Dues Fund
(collectively, the "Plaintiffs).

Probuild in the United States District Court for the Eastern District of Michigan (the "Judgment"), and after Defendant filed his bankruptcy petition, they timely filed a complaint in bankruptcy court to except the debt from discharge under 11 U.S.C. § 523(a)(4) and the Michigan Building Contract Fund Act, M.C.L. § 570.151 *et seq.* (the "MBCFA"). Plaintiffs allege that the Defendant was a statutory trustee under the MBCFA who committed a defalcation by (1) using the "building contract fund" in a manner inconsistent with his obligations as statutory trustee and (2) not paying the laborers whom Plaintiffs represent.

After discovery closed, Plaintiffs filed a motion for summary judgment under Civil Rule 56 (the "Motion," DN 18), which the Defendant opposed. The court held two hearings to consider the Motion in order to give the Defendant, who is proceeding without counsel, every opportunity to respond. After hearing the parties and carefully considering their submissions, the court will grant the Motion and enter a judgment declaring that the debt represented by the Judgment is non-dischargeable obligation of the Defendant to the extent set forth in this Opinion and Order.

## I.   JURISDICTION

The court has jurisdiction over the Defendant's bankruptcy case pursuant to 28 U.S.C. § 1334(a). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) because it involves a request to except a particular debt from discharge. In addition, the matter is within the automatic referral of bankruptcy proceedings to this court from the United States District Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.).

## II.   UNDISPUTED AND MATERIAL FACTS

The following facts are not genuinely disputed. Prior to filing bankruptcy, the Defendant was the sole officer and owner of Probuild, a Michigan limited liability company he formed on February 5, 2008 in order to work as a sub-contractor for Houseman Construction on the Studio One Apartments at Wayne State University (the "Project"). Although Probuild was itself a subcontractor, it in turn hired subcontractors, thus becoming a "contractor" within the meaning of the MBCFA. The Defendant was solely responsible for Probuild's administration, day-to-day operations and financial affairs.

Work began on the Project in mid-February. On May 1, 2008, the Defendant signed an Independent Agreement wherein he consented to bind Probuild to the 2006-2009 Architectural Contractors Trade Association Agreement. (Motion at Exh. D, the "Contract"). The Contract bound Probuild to a collective bargaining agreement that was effective from August 7, 2006 through May 31, 2009, and required Probuild to pay wages, deduct specified fringe benefit contributions for vacation and holiday pay (Motion at Exh. D, Sec 3A), and Michigan Building

Trades Per Capita Tax (Motion at Exh. D, Sec 3B).  Under the parties' undisputed agreement, Defendant obligated Probuild to remit these contributions to the Plaintiffs on behalf of laborers Probuild hired for the Project. (Motion at Exh. D. pp. 7-10).

The Defendant also agreed that Probuild would contribute certain amounts per hour and per employee to hospitalization and insurance (Motion at Exh. D, Sec. 3C), a pension fund (Motion at Exh. D, Sec 3D), the Bricklayers International Trust Fund (Motion at Exh. D, Sec 3E), an apprenticeship fund (Motion at Exh. D, Sec 3F), MUST Drug Testing (Motion at Exh. D, Sec 3G), and an industry advancement fund (Motion at Exh. D, Sec 3H), and forward those funds to the Plaintiffs as well. These payments were due monthly from May 1, 2008 through July 31, 2008, when Probuild ceased operating.[2]

The Plaintiffs argue that the Defendant was required to pay the fringe benefit contributions before he paid any operating expenses, and failed to do so in violation of the MBCFA. The Defendant claims that his last payment from Houseman Construction ("Houseman") was at the end of May, 2008, even though Houseman owes Probuild considerably more for the Project. He argues that because Houseman failed to pay Probuild, Probuild was unable to make the payments at issue in this proceeding.  In other words, after Houseman breached its obligations to Probuild, Probuild had no money to pay wages and contributions. He states that if Houseman had honored its obligations to Probuild, he would have paid the Plaintiffs.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment in an adversary proceeding is governed by Civil Rule 56, as incorporated under Bankruptcy Rule 7056.  *See* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. In considering a summary judgment motion, the court will grant relief only where there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). Specifically, the court may enter judgment before trial only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.*

---

[2] The Plaintiffs commenced a lawsuit against Probuild in the United States District Court for the Eastern District of Michigan on July 6, 2009, and were ultimately awarded $30,110.53, which represented liability for fringe benefit contributions accrued between May and October, 2008, as well as for wages, liquidated damages, interest, costs and attorney fees. However, after conducting discovery in this case, the Plaintiffs have determined that the appropriate damage period is from May 1, 2008 through July 31, 2008, and are seeking a non-dischargeability judgment for fringe benefit contributions ($20,572.33), liquidated damages resulting from the audit ($2,057.23) and liquidated damages resulting from late payments ($120.24) in the total amount of $22,749.80, rather than the entire amount the District Court awarded in its Judgment.

**Page 4 of 6**

A genuine issue of material fact exists where a reasonable jury could return a verdict for the nonmovant -- in this case the Defendant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After the moving party has met its summary judgment burden by showing that no genuine and material fact is in dispute, and that the moving party is entitled to judgment as a matter of law, the nonmovant cannot avoid summary judgment by relying on the allegations within his pleadings, but must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1261 (6th Cir. 1997) (quoting *Anderson*, 477 U.S. at 255). The court looks to the applicable substantive law in evaluating the materiality of a factual issue. *Anderson*, 477 U.S. at 248.

## IV.   APPLICABLE SUBSTANTIVE LAW

Plaintiffs' case depends upon two statutes, one federal and one state. The federal statute limits the bankruptcy discharge available to debtors who have breached particular fiduciary duties, and the state statute establishes the fiduciary duties in the first place.

The federal statute provides in relevant part as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b)
> or 1328(b) of this title does not discharge an individual
> debtor from any debt –
>
>> (4) for fraud or defalcation while acting in a fiduciary
>> capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4). The court must except a debt from discharge if the creditor establishes that the debt arises from "defalcation" when there is (1) a pre-existing fiduciary relationship; (2) a breach of that relationship; and (3) a resulting loss. *Board of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007). In order for a fiduciary relationship to exist, there must be an express or technical trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331 (1934).

The state statute (*i.e.*, MBCFA) establishes a statutory trust which, according to binding precedent, qualifies as an express or technical trust within the meaning of 11 U.S.C. § 523(a)(4). *Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-52 (6th Cir. 1982). More specifically, the MBCFA establishes the technical trust by providing, in relevant part, as follows:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

M.C.L. § 570.151.  In addition, the Sixth Circuit has found that an individual corporate officer can be a "contractor" for the purposes of the MBCFA and therefore a "fiduciary" for purposes of 11 U.S.C. § 523(a)(4). *Shamrock Floorcovering Services, Inc. v. Patel (In re Patel)*, 565 F.3d 963, 970 (6th Cir. 2009).

### V.   ANALYSIS

Because the Defendant does not dispute that, on behalf of Probuild, he received funds from Houseman,[3] hired subcontractors, and had sole responsibility for the administration of these funds, including who got paid and who did not, the court finds that he meets the requirements of a contractor under the MBCFA, and that a pre-existing fiduciary relationship existed under the MBCFA as soon as he received the funds from Houseman. Consequently, there is no genuine issue of material fact as to the first element of Plaintiffs' case because Defendant is a "fiduciary" within the meaning of 11 U.S.C. § 523(a)(4).

As far as the second element of Plaintiffs' case, the Motion establishes "breach" or "defalcation" based primarily on Exhibit G to the Motion, which includes Probuild's check register.  That document shows that the money received from Houseman after May 1, 2008 was enough to pay the Plaintiffs under the Contract, and that Probuild instead used the building contract fund for other expenditures such as meals and entertainment, fuel, car repairs, car insurance and office supplies. Even assuming Houseman failed to pay Probuild on the Project, this would not excuse Probuild (or the Defendant as its controlling principal) from meeting the company's obligation to the Plaintiffs, at least to the extent he received payment from Houseman. During the Contract's relevant term, Probuild received enough money to pay the Plaintiffs but failed to do so.

It is not necessary to prove Defendant's bad faith in order to establish the "breach" or "defalcation" element under 11 U.S.C.  § 523(a)(4): it is enough to prove that a contractor, in

---

[3] The funds that Probuild received from Houseman under the circumstances described in the Motion and the Defendant's response qualify as a "building contract fund" within the meaning of the MBCFA.  This establishes the *res*, satisfying the technical trust element of 11 U.S.C. § 523(a)(4).

possession of a building contract fund, failed to pay laborers, subcontractors or materialmen, and instead used the fund to pay other debts first, including overhead. *See Johnson*, 691 F.2d at 257; *Patel*, 565 F.3d at 969.

Defendant does not dispute Plaintiffs' factual showing in the manner that Civil Rule 56 requires, but generally argues that Houseman's default caused Probuild's default. However, because Probuild received a "building contract fund" and did not apply it in conformity with the MBCFA, the Defendant's explanation, though compelling, is irrelevant under controlling law. Therefore, the court finds that there is no genuine issue that the Defendant breached his fiduciary duty under 11 U.S.C. § 523(a)(4).

In order to prove the final or damage element of 11 U.S.C. § 523(a)(4), the Plaintiffs provided a revised audit, uncontroverted by the Defendant, showing the amounts still due and owing for the fringe benefit portion of the debt. (Motion at Exh. E). Because the Defendant has failed to come forward with specific evidence that these figures are incorrect, or that all or a portion of this debt has been paid, the court finds there is no genuine issue of material fact regarding the final element of Plaintiffs' case under 11 U.S.C. § 523(a)(4). The amount of the debt to be excepted from discharge is $22,749.80.

The court will enter a separate judgment consistent with this Opinion and Order.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Plaintiffs' Motion (DN 18) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall prepare a judgment consistent with this Opinion and Order, declaring that the Defendant's debt shall be excepted from discharge under 11 U.S.C. § 523(a)(4) to the extent of $22,749.80.

IT IS FURTHER ORDERED that the Clerk shall serve this Opinion and Order upon Craig Duane Warren (by first class mail) and David Eisenberg, Esq. pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4.

END OF ORDER

**IT IS SO ORDERED.**

_____
Scott W. Dales
United States Bankruptcy Judge

**Dated: January 24, 2011**